FILED

2011 JAN 21 P 3 43

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Laurence D. King (SBN 206423)
   Linda M. Fong (SBN 124232)
2  KAPLAN FOX & KILSHEIMER LLP
   350 Sansome Street, Suite 400
3  San Francisco, CA 94104
   Telephone: 415-772-4700
4  Facsimile: 415-772-4707
   Email: lking@kaplanfox.com
5       lfong@kaplanfox.com

6  Attorneys for Plaintiff Dallas Faulkner

7  [Additional counsel listed on signature block]

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

11

12

| DALLAS FAULKNER, on behalf of himself and all others similarly situated, | CIVIL ACTION NO. |
|---|---|

**CV 11 0326 RS**

13  Plaintiff,

14  vs.

15  RICHARD G. WOLFORD, MARY R.
    HENDERSON, TIMOTHY G. BRUER,
16  SAMUEL H. ARMACOST, TERENCE D.
    MARTIN, JOE L. MORGAN, DAVID R.
17  WILLIAMS, VICTOR L. LUND,
    SHARON L. MCCOLLAM, BLUE
18  MERGER SUB INC., BLUE
    ACQUISITION GROUP, INC. and DEL
19  MONTE FOODS COMPANY,
20

21              Defendants.

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAW**

**JURY TRIAL DEMANDED**

22

23

24

25

26

27

28

1

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, alleges the following upon information and belief, except for those allegations that pertain to plaintiff and his attorneys, which allegations are based on personal knowledge. Plaintiff's information and belief is based on, *inter alia*, the investigation conducted by his attorneys, including a review of the public filings of defendant Del Monte Foods Company ("Del Monte" or the "Company"), press releases, news articles and publicly available information concerning Del Monte:

1.      Plaintiff brings this action individually and as a class action on behalf of the public shareholders of Del Monte in connection with the purchase of the Company by Kohlberg Kravis Roberts & Co. L.P. ("KKR"), Vestar Capital Partners ("Vestar") and Centerview Partners ("Centerview") (the "Sponsors") through their affiliates, Blue Acquisition Group, Inc. ("Parent") and Blue Merger Sub Inc., a wholly-owned subsidiary of Parent ("Merger Sub") (collectively, the "Sponsors"), for $19.00 per share, pursuant to the Agreement and Plan of Merger by and among Merger Sub and Del Monte dated as of November 24, 2010 (the "Merger Agreement"). Plaintiff alleges that the sale of Del Monte to the Sponsors as contemplated by the Merger Agreement is unfair and inequitable to Del Monte's public stockholders and constitutes a breach of the fiduciary duties of the Del Monte's Board of Directors (hereinafter sometimes referred to as the "Board").

2.      Pursuant to the Merger Agreement, each share of Del Monte common stock will be exchanged for $19.00 in cash representing a total transaction value of approximately $5.3 billion, including the assumption of approximately $1.3 billion of net debt. Following completion of the acquisition, Merger Sub will merge with and into Del Monte and the Del Monte shares not acquired in the exchange offer will convert into the right to receive the same consideration as paid in the exchange offer (the "Proposed Acquisition").

1

3.      The Proposed Acquisition is subject to certain closing conditions, including approval of at least a majority of the outstanding shares of Del Monte common stock on a fully diluted basis, and is scheduled for a shareholder vote on February 15, 2011.

4.      The Proposed Acquisition as currently constituted is unfair to Del Monte shareholders because it does not adequately value the Company's future growth prospects, which will inure to Sponsors if the Proposed Acquisition is consummated.

5.      The recent historical averages for Del Monte's stock price demonstrate that the consideration being offered by Sponsors is unfair and inadequate.

6.      Indeed, the consideration to be paid to the class members is unconscionable, unfair and grossly inadequate because, among other things: (a) the intrinsic value of the stock of Del Monte is materially in excess of $19.00 per share, giving due consideration to the possibilities of growth and profitability of Del Monte in light of its business, earnings and earnings power, present and future; (b) the $19.00 per share price is inadequate and offers an inadequate premium to the public stockholders of Del Monte; and (c) the $19.00 per share price is not the result of arm's-length negotiations but was fixed arbitrarily to "cap" the market price of Del Monte, as part of a plan for Sponsors to obtain complete ownership of Del Monte assets and business at the lowest possible price.

7.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock-up the Proposed Acquisition with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, defendants agreed to: (i) a "go-shop" provision permitting through January 8, 2011, a limited period of 45 days, for the Company to actively solicit potential bidders (the "Go-Shop Period"); (ii) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information following the Go-Shop Period, which information is necessary to formulate a bid, except under extremely limited

2

1  circumstances; (iii) a matching rights provision that allows the Sponsors time to match any
2  competing proposal in the event one is made. Specifically, following the conclusion of the Go-
3  Shop Period, (a) within three (3) business days, the Company must notify Parent of any excluded
4  parties (i.e., parties that have during the Go-Shop Period provided the Company a written
5  Acquisition Proposal that the Board determines in good faith is, or could reasonably be expected to
6
7  result in, a superior proposal) and provide Parent with a written summary of the material terms and
8  conditions of any Acquisition Proposal received from an excluded party; and (b) the Company must
9  notify Parent within two (2) business days of any proposals or offers made. Finally, the Merger
10  Agreement contains a provision that requires the Company to pay Parent a termination fee of $60
11  million as a result of the Company entering into an alternative acquisition agreement with a person
12  who submits an acquisition proposal prior to the end of the Go-Shop Period. If the termination fee
13
14  becomes payable under any other circumstances, the amount payable to Parent is $120 million.
15  These provisions substantially limit the Board of Director's ability to act with respect to
16  investigating and pursuing superior proposals and alternatives including a sale of all or part of Del
17  Monte.

18      8.      On January 12, 2011, defendants filed a Definitive Proxy Statement (the "Proxy")
19  with the Securities and Exchange Commission ("SEC") in connection with the Proposed
20  Acquisition pursuant to which, *inter alia,* the Del Monte Board of Directors recommended that Del
21
22  Monte stockholders vote "FOR" the approval and adoption of the Merger Agreement and in favor
23  of the Proposed Acquisition at a shareholder vote to take place on February 15, 2011. In connection
24  with the Proxy, Defendants have breached their duty of candor by failing to disclose material
25  information (as described below) to Proxy shareholders necessary for them to determine whether to
26  vote in favor of the Proposed Acquisition.

27

28

3

CLASS ACTION COMPLAINT                                                    Case No. _____

9.     The Company's Board has breached its fiduciary duties to Del Monte shareholders by causing the Company to enter into the Merger Agreement that provides for the sale of Del Monte at an unfair price, and deprives Del Monte public shareholders of maximum value to which they are entitled.

10.    Plaintiff and the class have suffered and will suffer irreparable injury unless defendants are enjoined from breaching their fiduciary duties and from carrying out the aforesaid plan and scheme. Plaintiff seeks to enjoin defendants from approving the Proposed Acquisition or, in the event the Proposed Acquisition is consummated, recovering damages resulting from defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

## THE PARTIES

11.    Plaintiff has been a holder of Del Monte common stock since prior to the transactions herein complained of and continues to hold Del Monte common stock as of this date.

12.    Del Monte is a corporation duly organized and existing under the laws of the State of Delaware with its principal offices located at One Market @ The Landmark, San Francisco, California 94105. Del Monte together with its subsidiaries, produces, distributes, and markets branded pet products and food products for the United States retail market. It operates in two segments, Pet Products and Consumer Products. The Pet Products segment manufactures, markets, and sells branded and private label dry and wet pet food, as well as pet snacks; and produces and distributes private label pet products and food products. The Consumer Products segment manufactures, markets, and sells branded and private label shelf-stable products, including fruit, vegetable, tomato, and broth products. The Company sells its products through direct sales force and independent food brokers to grocery, club store, supercenter, and mass merchandiser customers; pet specialty, dollar stores, drug stores, convenience stores, military, food ingredients, and private label customers; and the foodservice industry. Del Monte was founded in 1916.

4

1    13.    Defendant Richard G. Wolford ("Wolford") is Chairman of the Board, President,

2  Chief Executive Officer and a director of Del Monte. Defendant Wolford joined the Company as

3  Chief Executive Officer and a director in April 1997. He was elected President of Del Monte in

4  February 1998 and was elected Chairman of the Board in May 2000.

5
6    14.    Defendant Mary R. Henderson ("Henderson") is and has been a director of Del

7  Monte since 2002.

8    15.    Defendant Timothy G. Bruer ("Bruer") is and has been a director of Del Monte since

9  1997. Bruer has served as Chief Executive Officer of Genisoy Food Co. Inc., a provider of soy

10  protein products and sports nutrition, since April 2005.

11    16.    Defendant Samuel H. Armacost ("Armacost") is and has been a director of Del

12  Monte since 2002.

13
14    17.    Defendant Terence D. Martin ("Martin") is and has been a director of Del Monte

15  since 2002.

16    18.    Defendant Joe L. Morgan ("Morgan") is and has been a director of Del Monte since

17  2002. Defendant Morgan has been a baseball broadcaster and analyst for ABC, NBC and ESPN

18  since 1985.

19    19.    Defendant David R. Williams ("Williams") is and has been a director of Del Monte

20  since 2002.

21
22    20.    Defendant Victor L. Lund ("Lund") is and has been a director of Del Monte since

23  2005. Defendant Lund currently serves as non-executive Chairman of DemandTec, a demand

24  forecasting software company, a position he has held since 2006.

25    21.    Defendant Sharon L. McCollam ("McCollam") is and has been a director of Del

26  Monte since 2007. Defendant McCollam has served as Executive Vice President, Chief Operating

27
28

5

1   and Chief Financial Officer of Williams-Sonoma, Inc., a specialty retailer of home furnishings,

2   since July 2006.

3       22.     The individual defendants in ¶¶13–21 constitute the Board of Del Monte (the

4   "Individual Defendants") and, by reason of their corporate directorships and executive positions,

5   stand in a fiduciary position relative to the Company's public shareholders. Their fiduciary duties,

6

7   at all times relevant herein, required them to exercise their best judgment, and to act in a prudent

8   manner, and in the best interest of the Company's minority shareholders. Said defendants owe the

9   public shareholders of Del Monte the highest duty of good faith, fair dealing, due care, loyalty, and

10  full candid and adequate disclosure.

11      23.     Defendant Parent is a Delaware corporation and affiliated and/or wholly owned by

12  the Sponsors formed for the purpose of acquiring Del Monte.

13

14      24.     Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of

15  Parent formed for the purpose of acquiring Del Monte.

16      25.     Defendants Parent and Merger Sub are named herein as aiders and abettors to the

17  Individual Defendants' breaches of fiduciary duty.

18      26.     Del Monte, the Individual Defendants and the Sponsors are collectively referred to

19  herein as "defendants."

20      27.     Each defendant herein is sued individually or as a conspirator or aider and abettor, as

21

22  well as in his capacity as an officer and/or director of the Company, and the liability of each arises

23  from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or

24  transactions complained of herein.

25                          **CLASS ACTION ALLEGATIONS**

26      28.     Plaintiff brings this action on his own behalf and as a class action, on behalf of all

27  shareholders of defendant Del Monte (except defendants herein and any person, firm, trust,

28

6

CLASS ACTION COMPLAINT                                    Case No. _____

1 | corporation or other entity related to or affiliated with any of the defendants) or their successors in

2 | interest, who have been or will be adversely affected by the conduct of defendants alleged herein.

3 | 29. This action is properly maintainable as a class action.

4
5
6
7
8 | 30. The class of shareholders for whose benefit this action is brought is so numerous that joinder of all class members is impracticable. There are approximately 194 million shares of common stock outstanding owned by thousands of shareholders of record scattered throughout the United States.

9
10 | 31. There are questions of law and fact which are common to members of the class. The common questions include, *inter alia*, the following:

11
12
13
14 | a. whether the Del Monte directors have breached their fiduciary duties to plaintiff and the class in connection with the Merger Agreement and related transactions; and

15
16
17 | b. whether plaintiff and the other members of the class will be damaged irreparably by defendants' failure to take action designed to obtain the best value for the public stockholders' interest in Del Monte.

18
19
20
21
22 | 32. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of plaintiff are typical of the claims of the other members of the class and plaintiff has the same interests as the other members of the class. Accordingly, plaintiff will fairly and adequately represent the class.

23
24
25 | 33. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and establish incompatible standards of conduct for the party opposing the class.

26
27
28 | 34. Defendants have acted and are about to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

7

CLASS ACTION COMPLAINT                                          Case No. _____

1

## SUBSTANTIVE ALLEGATIONS

2

### *Background*

3

35.    Del Monte together with its subsidiaries, produces, distributes, and markets branded

4

pet products and food products for the United States retail market.  It operates in two segments, Pet

5

6

Products and Consumer Products.  The Pet Products segment manufactures, markets, and sells

7

branded and private label dry and wet pet food, as well as pet snacks; and produces and distributes

8

private label pet products and food products.  The Consumer Products segment manufactures,

9

markets, and sells branded and private label shelf-stable products, including fruit, vegetable, tomato,

10

and broth products. The Company sells its products through direct sales force and independent food

11

brokers to grocery, club store, supercenter, and mass merchandiser customers; pet specialty, dollar

12

13

stores, drug stores, convenience stores, military, food ingredients, and private label customers; and

14

the foodservice industry.  Del Monte was founded in 1916.

15

### *The Proposed Acquisition*

16

36.    On November 25, 2010, Del Monte and the Sponsors jointly issued a press release

17

entitled, "KKR, VESTAR AND CENTERVIEW ENTER INTO AGREEMENT TO ACQUIRE

18

DEL MONTE FOODS."  The release stated in relevant part:

19

20
21
22
23

> Del Monte Foods Company (NYSE:DLM - News) and an investor group led by funds affiliated with Kohlberg Kravis Roberts & Co. L.P. ("KKR"), Vestar Capital Partners ("Vestar") and Centerview Partners ("Centerview") – collectively the "Sponsors"– today announced that they have signed a definitive agreement under which the Sponsors will acquire Del Monte for $19.00 per share in cash.

24
25
26
27

> The transaction, which was unanimously approved by Del Monte's board of directors, is valued at approximately $5.3 billion, including the assumption of approximately $1.3 billion in net debt. This price represents a premium of approximately 40 percent over Del Monte's average closing share price during the past three months prior to November 18, 2010, when market rumors of a transaction began, and is also higher than any price the Company's stock has ever achieved.

28

8

"This transaction delivers substantial shareholder value and is a clear endorsement of Del Monte's strategic success and effective execution. The hard work and dedication of our talented team has helped to transform Del Monte from a $1 billion consumer foods business into a branded pet and consumer products company with more than $3.7 billion in revenues," said Richard G. Wolford, Chairman and CEO of Del Monte Foods. "This transaction will enable our Company to continue to successfully grow, building on the foundation our team has put into place. We are excited about the ability to deliver substantial returns to our shareholders, as well as great prospects for Del Monte employees, customers and consumers."

37.     Pursuant to the Merger Agreement, each share of Company common stock accepted by Merger Sub will be exchanged for $19.00 in cash.

38.     Barclays Capital Inc. ("Barclays") served as one of the Company's financial advisors and provided a fairness opinion in connection with the Proposed Acquisition. Perella Weinberg Partners LP ("Perella") also served as a financial advisor and provided a fairness opinion in connection with the Proposed Acquisition. Gibson Dunn & Crutcher LLP served as legal advisor to the Company in connection with the Proposed Acquisition.

39.     Centerview Partners acted as lead financial advisor to the Sponsors in the Proposed Acquisition. Bank of America Merrill Lynch, J.P. Morgan Securities and Barclays also advised on the Proposed Acquisition. The Sponsors' lead legal advisor was Simpson Thacher & Bartlett LLP.

40.     The Sponsors have secured committed debt financing from Bank of America Merrill Lynch, Barclays, JPMorgan Chase, and KKR Capital Markets LLC, an affiliate of KKR.

41.     The Proposed Acquisition is subject to satisfaction or waiver of a number of conditions set forth in the Merger Agreement, including the expiration or termination of applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvement Act of 1976 and the approval of at least a majority of the shares of Del Monte common stock.

42.     In addition, pursuant to the Merger Agreement, Del Monte had the right to actively solicit superior proposals from third parties for a period of 45 days continuing through January 8,

9

1   2011. Del Monte has stated that there were no superior proposals that came about as a result of the

2   Go-Shop Period.

3       43.     The transaction is scheduled for a shareholder vote on February 15, 2011.    The

4   Proposed Acquisition is subject to approval by Del Monte shareholders, regulatory approval, and

5   certain other closing conditions.

6

7       44.     The Proposed Acquisition serves no legitimate business purpose of Del Monte but

8   rather is an attempt by defendants to enable Sponsors to benefit unfairly from the transaction at the

9   expense of Del Monte's public shareholders.    The Proposed Acquisition will, for a grossly

10  inadequate consideration, deny plaintiff and the other members of the class their right to share

11  proportionately in the future success of Del Monte and its valuable assets, while permitting

12  Sponsors to reap huge benefits from the transaction.

13

14      45.     The consideration to be paid to the class members is unconscionable, unfair and

15  grossly inadequate because, among other things: (a) the intrinsic value of the stock of Del Monte is

16  materially in excess of $19.00 per share, giving due consideration to the possibilities of growth and

17  profitability of Del Monte in light of its business, earnings and earnings power, present and future;

18  (b) the $19.00 per share price is inadequate and offers an inadequate premium to the public

19  stockholders of Del Monte; and (c) the $19.00 per share price is not the result of arm's-length

20  negotiations but was fixed arbitrarily to "cap" the market price of Del Monte, as part of a plan for

21

22  Sponsors to obtain complete ownership of Del Monte assets and business at the lowest possible

23  price.

24      46.     Indeed, on December 2, 2010, the Company reported increased income for the

25  second quarter fiscal 2011 results.   Specifically, the Company's operating income increased to

26  $148.0 million compared to $140.6 million last year, an increase of 5.3%. The Company further

27  reported that income from continuing operations was $81.1 million compared to $62.6 million last

28

10

1    year, an increase of 29.6%. Moreover, earnings per share ("EPS") from continuing operations was

2    $0.41 compared to $0.31 EPS last year. The income increases demonstrate that the consideration

3    being offered by Sponsors is unfair and inadequate. The consideration being offered does not

4    reflect the Company's intrinsic value and prospects for growth.

5

6    47.    On December 17, 2010, Del Monte announced that its Board of Directors declared a

7    cash dividend on its common stock of $0.09 per share. The dividend is payable on February 3, 2011

8    to stockholders of record as of the close of business on January 20, 2011.

9    48.    In addition to agreeing to a sale of the Company at an unfair price, the Individual

10   Defendants agreed to onerous deal protection devices in breach of their fiduciary duties to Del

11   Monte shareholders, which have prevented a superior offer from being made for the Company.

12   Specifically, defendants agreed to: (i) a Go-Shop Period provision permitting through January 8,

13   2011, a limited period of 45 days, for the Company to actively solicit potential bidders; (ii) a no-

14

15   solicitation provision that prevents other buyers from having access to the Company's confidential

16   information following the Go-Shop Period, which information is necessary to formulate a bid,

17   except under extremely limited circumstances; and (iii) a matching rights provision that allows the

18   Sponsors time to match any competing proposal in the event one is made. Specifically, following

19   the conclusion of the Go-Shop Period, (a) within three (3) business days, the Company must notify

20   Parent of any excluded parties (*i.e.*, parties that have provided the Company during the Go-Shop

21   Period a written Acquisition Proposal that the Board determines in good faith is, or could

22   reasonably be expected to result in, a superior proposal) and provide Parent with a written summary

23

24   of the material terms and conditions of any Acquisition Proposal received from an excluded party;

25   and (b) the Company must notify Parent within two (2) business days of any proposals or offers

26   made. Finally, the Merger Agreement contains a provision that requires the Company to pay Parent

27   a termination fee of $60 million as a result of the Company entering into an alternative acquisition

28

11

CLASS ACTION COMPLAINT                                                              Case No. _____

1    agreement with a person who submits an Acquisition Proposal prior to the end of the Go-Shop

2    Period. If the termination fee becomes payable under any other circumstances, the amount payable

3    to Parent is \$120 million. These provisions substantially limit the Board of Director's ability to act

4    with respect to investigating and pursuing superior proposals and alternatives including a sale of all

5    or part of Del Monte.

6

7    49.    Moreover, the Go-Shop Period provision is a paradigm in form over substance. In

8    agreeing to the Merger Agreement prior to adequately shopping the Company, the Individual

9    Defendants have breached their fiduciary obligations.

10    50.    The terms of the Merger Agreement are structured to ensure that Sponsors, and only

11    Sponsors, ultimately acquire Del Monte, regardless of whether such terms are designed and/or serve

12    to maximize shareholder value.

13

14    51.    The Termination Fee and expense obligation are deterrents to other potential bidders

15    and provide defendants with an unearned windfall at the expense of the Company's public

16    shareholders if a superior bid emerges. Accordingly, the terms of the Merger Agreement

17    substantially limit the Board's ability to act with respect to investigating and pursuing superior

18    proposals and alternatives including a sale of all or part of Del Monte.

19

### Barclays, the Company's Financial Advisor, Is Conflicted

20

21    52.    Barclays is acting as financial advisor to the Company in connection with the

22    Proposed Acquisition, including in connection with the Go-Shop Period. During January 2010,

23    Barclays contacted the Company on behalf of a private equity firm, Bidder A, a potential acquirer,

24    regarding a potential transaction. In response, the Company, with the assistance of Barclays,

25    simultaneously contacted five private equity firms, including KKR and Bidder A, to assess their

26    current interest in a transaction. The Company continued to utilize Barclays as its financial advisor

27

28

12

1 even after recognizing potential conflicts of interest inherent in Barclays representing potential
2 bidders.

3      53.    As compensation for its services in connection with the Proposed Acquisition, the
4 Company paid Barclays Capital $2,500,000 upon the delivery of Barclays' fairness opinion.
5 Additional compensation of $23,500,000 will be payable on completion of the Proposed
6 Acquisition. Barclay has performed various investment banking and financial services for the
7 Company, the Sponsors and their respective affiliates and portfolio companies in the past, and is
8 likely to perform such services in the future, and has received, and is likely to receive, fees for such
9 services. Specifically, Barclays has: (i) acted as co-lead arranger on the Company's current $1.2
10 billion senior secured credit facility, (ii) acted as joint book runner on the Company's $450 million
11 issuance of 7.5% senior subordinated notes in 2009, and (iii) acted as joint dealer manager and
12 solicitation agent on the Company's tender offer and consent solicitation for the Company's 8 5/8%
13 senior subordinated notes in 2009. As a result of the contingent portion of the fee, in addition to
14 other remuneration Barclays has received, shareholders may not be able to rely on Barclays to
15 render an unbiased, disinterested opinion, nor should the Individual Defendants have done so.

18      54.    Further, Barclays and certain of its affiliates may participate in the financing
19 necessary for the Proposed Acquisition, for which services Barclays and its affiliates will receive
20 significant compensation. In this regard, it was not in Barclays' interest for a strategic buyer to
21 acquire the Company since a strategic buyer does not generally leverage its balance sheet to result
22 in very profitable debt funding fees for Barclays.

### *The Lucrative Change- of- Control Packages to Directors and Executive Officers Create a Conflict*

26      55.    The Individual Defendants, in addition to executive officers of the Company, have
27 lucrative change-in-control arrangements. In addition to proceeds related to outstanding shares
28 currently held by the Company's executive officers, assuming completion of the Proposed

13

Acquisition on March 31, 2011, approximate proceeds related to outstanding and unexercised options, vested (*i.e.,* options that vest according to their standard terms; not options that become vested by operation of the merger) or unvested with respect to the Company's executive officers are as follows:

| Executive | Proceeds from Vested Options ($) | Proceeds from Unvested Options ($) | Total Proceeds from Options ($) |
|---|---|---|---|
| Richard G. Wolford (Chairman of the Board, President and Chief Executive Officer) | $ 20,700,903 | $ 12,638,634 | $ 33,339,537 |
| David L. Meyers (Executive Vice President, Administration and Chief Financial Officer) | 5,888,066 | 2,695,901 | 8,583,967 |
| Nils Lommerin (Chief Operating Officer) | – | 4,463,185 | 4,463,185 |
| Timothy A. Cole (Executive Vice President, Sales) | 251,940 | 2,360,468 | 2,612,408 |
| David W. Allen (Executive Vice President, Operations) | 2,147,143 | 1,765,540 | 3,912,683 |
| Larry E. Bodner (Executive Vice President, Finance) | – | 1,704,199 | 1,704,199 |
| Richard W. Muto (Executive Vice President and Chief Human Resources Officer) | 1,030,222 | 1,228,950 | 2,259,172 |
| Marc L. Brown (Senior Vice President, Corporate Service Center and Chief Information Officer) | 2,332,980 | 1,221,854 | 3,554,834 |
| Richard L. French (Senior Vice President, Treasurer, Chief Accounting Officer and Controller) | 2,127,447 | 1,183,621 | 3,311,068 |
| William D. Pearce (Senior Vice President, Chief Marketing Officer) | 1,881,510 | 2,480,186 | 4,361,696 |

CLASS ACTION COMPLAINT                                    Case No. _____

| | | | |
|---|---|---|---|
| James G. Potter (Senior Vice President, General Counsel and Secretary) | 2,909,535 | 1,185,415 | 4,094,950 |

56.     Assuming completion of the Proposed Acquisition on March 31, 2011, the approximate proceeds related to performance share units that would become vested with respect to the Company's executive officers are as follows:

| Executive | Proceeds from Performance Share Units ($) | |
|---|---|---|
| Richard G. Wolford | $ | 16,524,300 |
| David L. Meyers | | 3,545,400 |
| Nils Lommerin | | 5,611,650 |
| Timothy A. Cole | | 3,023,850 |
| David W. Allen | | 2,334,150 |
| Larry E. Bodner | | 2,163,150 |
| Richard W. Muto | | 1,482,000 |
| Marc L. Brown | | 1,573,200 |
| Richard L. French | | 1,496,250 |
| William D. Pearce | | 1,464,900 |
| James G. Potter | | 1,490,550 |

57.     Assuming completion of the Proposed Acquisition on March 31, 2011, the approximate proceeds related to performance accelerated restricted stock units that would become vested with respect to the Company's executive officers are as follows:

| Executive | Proceeds from Performance Accelerated Restricted Stock Units ($) | |
|---|---|---|
| Richard G. Wolford | $ | 3,382,000 |
| David L. Meyers | | 735,300 |
| Nils Lommerin | | 1,225,500 |
| Timothy A. Cole | | 653,600 |

15

| | |
|---|---|
| David W. Allen | 442,700 |
| Larry E. Bodner | 442,700 |
| Richard W. Muto | 343,900 |
| Marc L. Brown | 349,600 |
| Richard L. French | 326,800 |
| William D. Pearce | 423,700 |
| James G. Potter | 326,800 |

58.    Assuming completion of the Proposed Acquisition on March 31, 2011, the

approximate proceeds related to restricted stock units that would become vested with respect to the

Company's executive officers are as follows:

| Executive | Proceeds from Restricted Stock Units ($) |
|---|---|
| Richard G. Wolford | $ 1,305,300 |
| David L. Meyers | 256,500 |
| Nils Lommerin | 490,200 |
| Timothy A. Cole | 233,700 |
| David W. Allen | 212,800 |
| Larry E. Bodner | 212,800 |
| Richard W. Muto | 142,500 |
| Marc L. Brown | 106,400 |
| Richard L. French | 125,400 |
| William D. Pearce | 121,600 |
| James G. Potter | 127,300 |

59.    Assuming completion of the Proposed Acquisition on March 31, 2011, the

approximate proceeds related to deferred stock units that would become vested with respect to the

Company's executive officers are as follows:

16

CLASS ACTION COMPLAINT                                        Case No. _____

| Executive | Proceeds from Deferred Stock Units ($) |
|---|---|
| Richard G. Wolford | $ --- |
| David L. Meyers | 329,476 |
| Nils Lommerin | 406,819 |
| Timothy A. Cole | 113,092 |
| David W. Allen | 128,969 |
| Larry E. Bodner | 22,023 |
| Richard W. Muto | --- |
| Marc L. Brown | --- |
| Richard L. French | --- |
| William D. Pearce | --- |
| James G. Potter | --- |

60.    In addition to proceeds related to outstanding shares currently held by the Company's non-employee directors, assuming completion of the Proposed Acquisition on March 31, 2011, the approximate proceeds related to outstanding and unexercised vested options (there are no unvested options since the Company has not granted options to non-employee directors in recent years and all previously granted options became vested no later than the end of the Company's 2008 fiscal year based on a director's service prior to that time) with respect to the Company's non-employee directors are as follows:

| Non-Employee Director | Proceeds from Vested Options ($) |
|---|---|
| Samuel H. Armacost | $ 291,300 |
| Timothy G. Bruer | 470,025 |
| Mary R. (Nina) Henderson | 291,300 |
| Victor L. Lund | 168,750 |
| Terence D. Martin | 291,300 |
| Sharon M. McCollam | --- |
| Joe L. Morgan | 291,300 |
| David R. Williams | 291,300 |

17

61.     Assuming completion of the Proposed Acquisition on March 31, 2011, the approximate proceeds related to restricted stock units that would become vested with respect to the Company's non-employee directors are as follows:

| Non-Employee Director | | Proceeds from Restricted Stock Units ($) |
|---|---|---|
| Samuel H. Armacost | $ | 353,248 |
| Timothy G. Bruer | | 353,248 |
| Mary R. (Nina) Henderson | | 353,248 |
| Victor L. Lund | | 353,248 |
| Terence D. Martin | | 353,248 |
| Sharon M. McCollam | | 353,248 |
| Joe L. Morgan | | 353,248 |
| David R. Williams | | 353,248 |

62.     The table below provides estimates of what each executive would receive upon an involuntary termination in connection with the Proposed Acquisition. For comparison purposes, the table below also provides an estimate of what each executive would receive outside of the context of a change in control and the difference between these benefits and the change in control benefits.

| Executive | Severance Upon Termination in Connection with a Change in Control ($) (1) | | Severance Upon Termination without a Change in Control ($) (1) (2) (3) | | Difference in Total Benefits ($) |
|---|---|---|---|---|---|
| Richard G. Wolford | | | | | |
| | | | | | |
| Multiple of Base Salary and Target AIP Award | $ | 7,095,271 | (4) $ | 4,746,001 | |
| Perquisite Allowance | | 84,000 | | 84,000 | |
| Pro-Rata Target AIP Award | | 1,139,417 | | 1,139,417 | |

18

| | | | | |
|---|---|---|---|---|
| Health and Welfare Benefit Continuation | 70,227 | 70,227 | | |
| Total | 8,388,915 | 6,039,645 | $ | 2,349,270 |

**David L. Meyers**

| | | | | |
|---|---|---|---|---|
| Multiple of Base Salary and Target/Prior AIP Award | (5) 1,887,000 | (5) 2,457,736 | | |
| Perquisite Allowance | 36,000 | 36,000 | | |
| Pro-rata Target AIP Award | 352,625 | 352,625 | | |
| Health and Welfare Benefit Continuation | 108,445 | 108,445 | | |
| Enhanced Benefits under the Additional Benefits Plan — Qualified Pension Plan Portion | 250,000 | 250,000 | | |
| Total | 2,634,070 | 3,204,806 | | (570,736) |

**Nils Lommerin**

| | | | | |
|---|---|---|---|---|
| Multiple of Base Salary and Target AIP Award | 2,358,000 | 1,768,500 | | |
| Perquisite Allowance | 54,000 | 54,000 | | |
| Pro-rata Target AIP Award | 473,666 | 473,666 | | |
| Health and Welfare Benefit Continuation | 20,946 | 20,946 | | |
| Total | 2,906,612 | 2,317,112 | | 589,500 |

CLASS ACTION COMPLAINT                                      Case No. _____

| | | | |
|---|---|---|---|
| **Timothy A. Cole** | | | |
| Multiple of Base Salary and Target AIP Award | 1,621,800 | 1,216,350 | |
| Perquisite Allowance | 54,000 | 54,000 | |
| Pro-rata Target AIP Award | 303,275 | 303,275 | |
| Health and Welfare Benefit Continuation | 19,623 | 19,623 | |
| Total | 1,998,698 | 1,593,248 | 405,450 |
| **Richard L. French** | | | |
| Multiple of Base Salary and Target AIP Award | 1,085,000 | 813,750 | |
| Perquisite Allowance | 45,000 | 45,000 | |
| Pro-rata Target AIP Award | 172,608 | 172,608 | |
| Health and Welfare Benefit Continuation | 18,682 | 18,682 | |
| Total | 1,321,290 | 1,050,040 | 271,250 |
| **Richard W. Muto** | | | |
| Multiple of Base Salary and Target AIP Award | 1,251,250 | 938,438 | |
| Perquisite Allowance | 54,000 | 54,000 | |
| Pro-rata Target AIP Award | 204,531 | 204,531 | |
| Health and Welfare Benefit Continuation | 9,041 | 9,041 | |
| Total | 1,518,822 | 1,206,010 | 312,812 |
| **James G. Potter** | | | |
| Multiple of Base Salary and Target AIP Award | 1,240,000 | 930,000 | |
| Perquisite Allowance | 45,000 | 45,000 | |
| Pro-rata Target AIP Award | 199,834 | 199,834 | |
| Health and Welfare Benefit Continuation | 19,053 | 19,053 | |
| Total | 1,503,887 | 1,193,887 | 310,000 |

63.     The table below provides estimates of what each executive would receive upon an involuntary termination in connection with a change in control or the Proposed Acquisition. For comparison purposes, the table below also provides an estimate of what each executive would receive outside of the context of a change in control and the difference between these benefits and the change-in-control benefits.

20

| Executive | Severance Upon Termination in Connection with a Change in Control ($) (1) | Severance Upon Termination without a Change in Control ($) (1) (2) | Difference in Total Benefits ($) |
|---|---|---|---|
| David W. Allen | | | |
| Multiple of Base Salary and Target AIP Award | $ 1,430,000 | $ 1,072,500 | |
| Pro-rata Target AIP Award | 248,958 | 248,958 | |
| Health and Welfare Benefit Continuation | 19,350 | 19,350 | |
| Total | 1,698,308 | 1,340,808 | $ 357,500 |
| | | | |
| Larry E. Bodner | | | |
| Multiple of Base Salary and Target AIP Award | 1,430,000 | 1,072,500 | |
| Pro-rata Target AIP Award | 248,958 | 248,958 | |
| Health and Welfare Benefit Continuation | 23,339 | 23,339 | |
| Total | 1,702,297 | 1,344,797 | 357,500 |
| | | | |
| Marc L. Brown | | | |
| Multiple of Base Salary and Target AIP Award | 1,041,600 | 781,200 | |
| Pro-rata Target AIP Award | 168,300 | 168,300 | |
| Health and Welfare Benefit Continuation | 18,576 | 18,576 | |
| Total | 1,228,476 | 968,076 | 260,400 |
| | | | |
| William D. Pearce | | | |
| Multiple of Base Salary and Target AIP Award | 1,378,000 | 1,033,500 | |
| Pro-rata Target AIP Award | 241,250 | 241,250 | |
| Health and Welfare Benefit Continuation | 19,231 | 19,231 | |
| Total | 1,638,481 | 1,293,981 | 344,500 |

21

64.     Each executive officer of the Company may receive a tax gross-up in the event that payments made in connection with the Proposed Acquisition become subject to taxation under Section 280G and Section 4999 of the Internal Revenue Code (referred to as the "280G gross-up"). Certain executive officers are only entitled to receive the 280G gross-up in the event that payments exceed the level at which any payment is treated as an "excess parachute payment" under Section 280G by 5% or more.

65.     The table below includes estimated 280G gross-up payments, based on the equity acceleration alone (and not taking into consideration potential severance benefits) in connection with the Proposed Acquisition, and also based on both the equity acceleration and taking into consideration potential severance benefits.

| Executive | Estimated 280G Gross-Up (if entitled) on Equity Only ($) | Estimated 280G Gross-Up (if entitled) on Severance and Equity ($) |
|---|---|---|
| Richard G. Wolford | $ – | $ – |
| David L. Meyers | – | – |
| Nils Lommerin | – | 3,988,443 |
| Timothy A. Cole | – | 2,289,861 |
| David W. Allen | – | 1,921,273 |
| Larry E. Bodner | – | 2,033,374 |
| Richard W. Muto | – | 1,414,109 |
| Marc L. Brown | – | 1,209,948 |
| Richard L. French | – | 1,239,938 |
| William D. Pearce | – | 1,531,982 |
| James G. Potter | – | 1,385,507 |

66.     Immediately prior to the effective time of the Proposed Acquisition, all amounts held in participant accounts and denominated in Company common stock under Del Monte

22

1    Corporation's AIP Deferred Compensation Plan or the Company's 2003 or 2005 Non-Employee

2    Director Deferred Compensation Plans (the "Deferred Stock Units"), shall become fully vested

3    contingent upon the effective time of the Merger, and unless otherwise agreed by Parent and an

4    individual participant in one or more of such plans, be converted into an obligation of the Company

5
6    to pay cash with a value equal to the product of $19.00 and the number of deferred stock units held

7    in such participant accounts.

8        67.   Executives are otherwise entitled to their accrued benefits under the Company's

9    retirement and deferred compensation plans pursuant to the terms of those plans. None of those

10    plans provide for additional benefits on account of the occurrence of the merger. Pursuant to the

11    terms of the Merger Agreement, each of the Company's 2003 and 2005 Non-Employee Director

12
13    Deferred Compensation Plans, the Del Monte Corporation Executive Deferred Compensation Plan,

14    effective December 20, 2002 (as amended and restated as of December 31, 2004), the Deferred

15    Compensation Plan, effective October 1, 2009 and the elective deferral account of Del Monte

16    Corporation's AIP Deferred Compensation Plan (i.e., the portion associated with amounts deferred

17    and therefore contributed by the executive, as opposed to Company match amounts) will be

18    terminated prior to the occurrence of the merger in accordance with the provisions of Treas. Reg.

19
20    1.409A-3(j)(ix)(B) and all obligations thereunder will be paid at or before the occurrence of the

21    Merger.

22        68.   Assuming completion of the Proposed Acquisition on March 31, 2011, the

23    approximate proceeds related to the deferred compensation plans being terminated and paid out

24    before the occurrence of the Merger with respect to the Company's executive officers are as follows:

25

26

27

28

23

| Executive | Proceeds from Deferred Compensation Plans ($) | |
|---|---|---|
| Richard G. Wolford | $ | 5,047,629 |
| David L. Meyers (1) | | 3,938,305 |
| Nils Lommerin (1) | | 5,467,516 |
| Timothy A. Cole | | 1,064,812 |
| David W. Allen | | 999,758 |
| Larry E. Bodner | | 132,367 |
| Richard W. Muto (1) | | 454,926 |
| Marc L. Brown | | – |
| Richard L. French | | – |
| William D. Pearce | | – |
| James G. Potter | | 497,814 |

69.     Assuming completion of the Merger on March 31, 2011, the approximate proceeds related to the deferred compensation plans being terminated and paid out before the occurrence of the Merger with respect to the Company's non-employee directors are as follows:

| Non-Employee Director | Proceeds from Deferred Compensation Plans ($)(1) | |
|---|---|---|
| Samuel H. Armacost | $ | 729,660 |
| Timothy G. Bruer | | – |
| Mary R. (Nina) Henderson | | 822,092 |
| Victor L. Lund | | 602,993 |

24

1  Terence D. Martin                                      729,660

2  Sharon M. McCollam                                     902,046

3  Joe L. Morgan                                                –

4  David R. Williams                                            –

5
70.     Based upon option exercises after December 15, 2010 but before January 1, 2011,

6
the approximate "make-whole" payments to be made following completion of the Merger to the

7
Company's executive officers are as follows:
8

9

| Executive | Make-Whole Payment ($) | |
|---|---|---|
| Richard G. Wolford | $ | 656,040 |
| David L. Meyers | | 12,654 |
| Nils Lommerin | | 224,077 |
| Timothy A. Cole | | – |
| David W. Allen | | 80,812 |
| Larry E. Bodner | | 45,085 |
| Richard W. Muto | | 27,337 |
| Marc L. Brown | | 7,378 |
| Richard L. French | | – |
| William D. Pearce | | – |
| James G. Potter | | – |

21
22
*The Proxy Is Materially Misleading and/or Incomplete*

23
71.     On January 12, 2011, Defendants filed the Proxy in connection with the Proposed

24
Acquisition and seeking, *inter alia*, the approval of Del Monte shareholders of the Merger

25
Agreement and the transactions contemplated thereby.

26
27
28

25

72.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote in favor of the Proposed Acquisition.

73.     For example, the Proxy fails to disclose certain of the underlying methodologies, projections, key inputs and multiples relied upon and observed by Barclays, the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by them and relied upon by the Board in recommending the Proposed Acquisition.

74.     In particular, the Proxy is deficient and fails to provide, *inter alia*, the following:

   A.  in the *Discounted Analyst Price Targets* prepared by Barclays; (i) the various analysts price targets; (ii) the respective reports, including dates and analysts; and (ii) a sufficient basis for using a discount rate of 9.7% to the analyst price targets reaching as high as $22.00 per share.

   B.  in the *Selected Comparable Company Analysis* prepared by Barclays: (i) the criteria for the selection of the referenced companies in the Large-Cap Packaged Foods peers, Packaged Foods peers and Fresh Produce peers; (ii) the multiples for each of the referenced companies; (iii) the basis for selection by Barclays of a range of 6.5x to 8.0x calendar year 2011 estimated EBITDA for the Company; and (iv) the basis for applying such range to the LRP Forecasts of the Company.

   C.  in the *Discounted Equity Value Analysis* prepared by Barclays: (i) the basis for multiplying the earnings per share estimates for calendar years 2011 to 2014 based on the LRP Forecasts to price to earnings multiples of 9.9x; (ii) the basis for using the mean of 12.3x of the packaged food peer companies and not the median or various multiples for calendar year 2011 price earnings ratios in order to estimate future prices per share; and (iii) the basis for the estimated future prices per share being discounted to present value using a discount rate of 9.7%.

   D.  in the *Selected Precedent Transaction Analysis* prepared by Barclays: (i) the reasons for the data points selected; (ii) terms of the respective transactions; (iii) the enterprise value for the respective transactions; and (iv) the respective multiple for each transaction.

26

1

2          E.  in the *Transaction Premium Analysis* prepared by Barclays: (i) the
               reasons for the data points selected; (ii) a description of all of the
3              transactions; and (iii) the respective premiums in each transaction.

4

5          F.  in the *Discounted Cash Flow Analysis* prepared by Barclays: (i)
               all line items that were used in calculating the Company's free
6              cash flows; (ii) the free cash flows for years 2011 through 2016;
               (iii) the assumptions used to determine estimated cash flows for
7              2015 and 2016; (iv) the basis for using a range of terminal
               EBITDA multiples of 6.5x to 7.5x.; and (v) the inputs used for
8              calculating discount rates ranging from 7.5% to 8.5%, reflecting
               Barclays' estimates of the Company's weighted-average cost of
9              capital, including betas, and risk rates.

10

11         G.  in the *Leveraged Acquisition Analysis* prepared by Barclays: (i)
               the assumptions used to obtain the capital structure of the
12             Company including initial leverage of funded debt to adjusted
               EBITDA of 6.5x; (ii) the basis for the assumption that private
13             equity firms seek an equity investment that would achieve a five-
               year rate of return of 18% to 20%; and (iii) the basis for a 2016
14             exit multiple of 7.0x to 8.0x projected 2016 EBITDA.

15

16   75.      The Proxy also fails to disclose the underlying methodologies, key inputs and

17   multiples relied upon and observed by Perella, the Company's other financial advisor, so that

18   shareholders can properly assess the credibility of the various analyses performed by them. In

19   particular, the Proxy is deficient and fails to provide, *inter alia*, the following:

20         A.  in the *Equity Research Analyst Price Targets Analysis* prepared by
               Perella; (i) the various analysts' price targets; (ii) the respective
21             reports, including dates and analysts; and (ii) a sufficient basis for
               using a discount rate of 9.3% cost of equity to the analyst price
22             targets reaching as high as $22.00 per share.

23

24         B.  in the *Premiums Paid Statistics Analysis* prepared by Perella: (i)
               the reasons for the data points selected; (ii) a description of all of
25             the transactions; and (iv) the respective premiums in each
               transaction.
26

27         C.  in the *Precedent Transaction Analysis* prepared by Perella: (i) the
               reasons for the data points selected; (ii) terms of the respective
28

27

transactions; (iii) the enterprise value for the respective transactions; and (iv) the respective multiple for each transaction.

D. in the *Discounted Cash Flow Analysis* prepared by Perella: (i) all line items that were used in calculating the Company's free cash flows; (ii) the basis for using a range of terminal EBITDA multiples of 6.5x to 7.5x NTM EBITDA.; and (iii) the inputs used for calculating discount rates ranging from 7.5% to 8.5%, reflecting Perella's estimates of the Company's weighted-average cost of capital, including betas, and risk rates.

E. in the *Public Company Comparison Analysis* prepared by Perella: (i) the reasons for the data points selected; (ii) the P/E ratio for calendar years 2011 and 2012 for each company; and (iii) the enterprise value as a multiple of estimated EBITDA for calendar years 2011 and 2012 for each company.

F. in the *Illustrative Future Share Price Analysis* prepared by Perella: (i) the basis for applying a multiple range of 9.5x to 12.5x to estimated EPS for calendar years 2011, 2012 and 2013; and (ii) the inputs used for calculating a discount rate of 9.3% (estimated current cost of equity).

76.     The Proxy fails to disclose the terms of Barclays participation in the financing of the Proposed Acquisition. Additionally, the Proxy fails to disclose the substantive considerations of the Board in connection with any potential conflict that may arise as a result of Barclays' participation in the financing of the Proposed Acquisition.

77.     Moreover, the Proxy fails to disclose what amount, if any, of the $3 million in fees to Perella are contingent upon closing of the Proposed Acquisition. Although the Proxy mentions that in the past two years prior to the date of Perella's opinion, Perella has not received any fees from Del Monte and yet has received fees in connection with services to the Sponsors, the Proxy fails to disclose the services or fees provided or paid from the Sponsors or from the Company, if any, prior to two years ago. This information is critical since a shareholder does not know whether the fees were material or not.

78.     By virtue of their positions as directors and senior officers of the Company, the Individual Defendants have access to and knowledge of Del Monte's internal financial information

28

1  which reveals the true financial and operating condition and prospects of the Company, and have

2  shared such information with Sponsors.   Defendants are using this information to benefit

3  themselves at the expense and to the detriment of Del Monte and the public shareholders.

4
5      79.     Moreover, the Individual Defendants are motivated by their desire to secure personal

6  benefits as a result of the Proposed Acquisition. Certain directors and/or officers stand to reap tens,

7  if not hundreds, of millions of dollars of personal benefits at the expense of the Company and its

8  public shareholders if the Merger is consummated, including the right to receive change-in-control

9  benefits (such as the acceleration of their stock options), thus putting their own personal financial

10  interests irreconcilably in conflict with the interests of the Company and its public shareholders.

11     80.     The Del Monte Board thus acceded to the Sponsors' desire to structure a sale of the

12  Company that unfairly benefits the Sponsors at the expense of the public stockholders.

13
14     81.     Additionally, Barclays, the Company's financial advisor, is conflicted due to its

15  commitment of debt financing to the Sponsors.

16     82.     The Individual Defendants' actions in proceeding with the Proposed Acquisition are

17  wrongful, unfair, and harmful to Del Monte's public stockholders, and will deny them their right to

18  share proportionately in the true value of Del Monte's valuable assets, profitable business, and

19  future growth in profits and earnings.  The Individual Defendants have breached their fiduciary

20  duties to Del Monte shareholders and failed to maximize shareholder value by causing the

21
22  Company to enter into the Merger Agreement that provides for the sale of Del Monte at an

23  inadequate price, and deprives Del Monte's public shareholders of maximum value to which they

24  are entitled.

25     83.     Plaintiff has no adequate remedy at law.

26
27
28

29

CLASS ACTION COMPLAINT                                      Case No. _____

**FIRST CAUSE OF ACTION**

**Class Claim Against the Defendants for Violation of Section 14(a)
of the Securities Exchange Act of 1934**

84.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

85.     This claim is brought by plaintiff against the defendants for violations of §14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78a, et seq. (2008), and SEC Rule 14a-9 promulgated thereunder.

86.     Defendants named in this claim disseminated the false and misleading Proxy which they knew or should have known was misleading in that it contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

87.     The Proxy was prepared and disseminated by defendants named in this claim. It misrepresented and/or concealed certain material information concerning the nature of the process involved in the Proposed Acquisition and the true value of the Company. In so doing, they made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

88.     Defendants named in this claim issued the Proxy, which was materially false and misleading. Defendants were aware of and/or had access to the true facts concerning the process involved in selling the Company and the true value of the Company. However, notwithstanding this knowledge, each of the defendants purported to and/or approved the dissemination of the false Proxy.

89.     Defendants permitted the Company to be sold in an effort to aggrandize their own financial position and interests at the expense of Del Monte shareholders. By relying on the false

30

1  and misleading statements in the Proxy, the shareholders who are unaware of untruths, and relied

2  thereon, were directly and proximately harmed by the defendants' wrongful conduct. By reason of

3  such misconduct, the defendants are liable pursuant to §14(a) of the Exchange Act and SEC Rule

4  14a-9 promulgated thereunder.

5

6  **SECOND CAUSE OF ACTION**

7  **Class Claim Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act**

8

9  90.     Plaintiff brings this Exchange Act claim on behalf of himself individually.

10  91.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

11  herein, except for those allegations relating to class action certification standards.

12  92.     The Individual Defendants acted as controlling persons of Del Monte within the

13  meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers

14  and/or directors of Del Monte, and participation in and/or awareness of the Company's operations

15  and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they

16  had the power to influence and control and did influence and control, directly or indirectly, the

17  decision making of the Company, including the content and dissemination of the various statements

18

19  which plaintiff contends are false and misleading.

20  93.     Each of the Individual Defendants and Del Monte were provided with or had

21  unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading

22  prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

23  of the statements or cause the statements to be corrected.

24

25  94.     In particular, each of the Individual Defendants had direct and supervisory

26  involvement in the day-to-day operations of the Company, and, therefore, are presumed to have had

27  the power to control or influence the particular transactions giving rise to the securities violations

28  alleged herein, and exercised the same.     The Proxy at issue contains the unanimous

31

1 recommendation of each of the Individual Defendants to approve the Proposed Acquisition. They

2 were, thus, directly involved in the making of this document. In addition, as the Proxy sets forth at

3 length, and as described herein, the Individual Defendants were each involved in negotiating,

4 reviewing, and/or approving the Proposed Acquisition. The Proxy purports to describe the various

5 issues and information that the Individual Defendants reviewed and considered. The Individual

6

7 Defendants participated in drafting and/or gave their input on the content of those descriptions.

8     95.     By virtue of the foregoing, the Individual Defendants have violated §20(a) of the

9 Exchange Act.

10    96.     As set forth above, the Individual Defendants had the ability to exercise control over

11 and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their

12 acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

13 defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of the

14

15 Individual Defendants' conduct, plaintiff will be irreparably harmed.

16                              **THIRD CAUSE OF ACTION**

17                          <u>**Claim for Breach of Fiduciary Duties**</u>

18    97.     Plaintiff repeats and realleges each allegation set forth herein.

19    98.     The Individual Defendants have violated their fiduciary duties of care, good faith,

20 and loyalty owed under applicable law to the public shareholders of Del Monte and have placed the

21 interests of insiders ahead of the interests of Del Monte's shareholders.

22

23    99.     As demonstrated by the allegations above, the Individual Defendants failed to

24 exercise the care required, and breached their duties of loyalty, good faith, care and candor owed to

25 the shareholders of Del Monte because, among other reasons:

26            a.      they failed to properly value Del Monte;

27

28

                                             32

b. they failed to take steps to maximize the value of Del Monte to its public shareholders and they took steps to avoid competitive bidding, and to give the Sponsors an unfair advantage, by, among other things, failing to adequately solicit other potential acquirers or alternative transactions;

c. they failed to properly value Del Monte and its various assets and operations;

d. they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interests in connection with the Proposed Acquisition; and

e. they erected unreasonable barriers to other third-party bidders.

100. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as part of a common plan and scheme and in breach of their fiduciary duties of loyalty, good faith and due care to plaintiff and the other members of the class, have failed to adequately inform themselves about the true value of the Company and, by agreeing to the Proposed Acquisition with the Sponsors, will unfairly deprive plaintiff and other members of the class of the true value of their investment in Del Monte.

101. Del Monte shareholders will, if the Proposed Acquisition is consummated, be deprived of the opportunity for substantial gains which the Company may realize.

102. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other Del Monte public stockholders.

103. As a result of the actions of defendants, plaintiff and the other members of the class have been and will be damaged in that they have not and will not receive their fair proportion of the value of Del Monte's assets and businesses and will be prevented from obtaining appropriate consideration for their shares of Del Monte common stock.

33

104.    Unless enjoined by this Court, the defendants will continue to breach their fiduciary duties owed to plaintiff and the other members of the class, and may consummate the Proposed Acquisition which will exclude the class from its fair proportionate share of Del Monte's valuable assets and businesses, all to the irreparable harm of the Class, as aforesaid.

105.    Plaintiff and the class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## FOURTH CAUSE OF ACTION

### On Behalf of Plaintiff and the Class Against
### Parent and Merger Sub for Aiding and Abetting the
### Individual Defendants' Breaches of Fiduciary Duty

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Parent and Merger Sub have knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. Del Monte and Sponsors are also active and necessary participants in the Individual Defendants' plan to complete the Proposed Acquisition terms that are unfair to Del Monte shareholders, as Sponsors seek to pay as little as possible to Del Monte shareholders.

108.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands injunctive relief in his favor and in favor of the class and against defendants as follows:

A.    Declaring that this action is properly maintainable as a class action;

B.    Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

34

1       C.       Enjoining defendants, their agents, counsel, employees and all persons acting

2 in concert with them from consummating the Proposed Acquisition, unless and until the Company

3 adopts and implements a procedure or process to obtain a merger agreement providing the best

4 possible terms for shareholders;

5

6       D.       Directing the Individual Defendants to exercise their fiduciary duties to

7 obtain a transaction which is in the best interests of Del Monte's shareholders until the process for

8 the sale or auction of the Company is completed and the best possible consideration is obtained for

9 Del Monte;

10       E.       Awarding plaintiff the costs and disbursements of this action, including

11 reasonable attorneys' and experts' fees; and

12       F.       Granting such other and further relief as this Court may deem just and proper.

13

14 DATED: January 21, 2011             Respectfully submitted,

15                               KAPLAN FOX & KILSHEIMER LLP

16

17                 By: _____

18                     Laurence D. King (SBN 206423)
                      Linda M. Fong (SBN 124232)

19                     350 Sansome Street, Suite 400
                      San Francisco, CA 94104

20                     Telephone: 415-772-4700
                      Facsimile: 415-772-4707

21                     lking@kaplanfox.com
                      lfong@kaplanfox.com

22                     Joshua M. Lifshitz

23                     Peter D. Bull
                      BULL & LIFSHITZ, LLP

24                     18 East 41st Street
                      New York, NY 10017

25                     Telephone: (212) 213-6222
                      Facsimile: (212) 213-9405

26                     counsel@nyclasslaw.com

27                     *Attorneys for Plaintiff Dallas Faulkner*

28

35

## CERTIFICATE OF NAMED PLAINTIFF

I, Dallas Faulkner, certify that:

1.    I have reviewed the complaint and authorized its filing or the filing of a Motion for Lead Plaintiff on my behalf by Bull & Lifshitz, LLP.

2.    I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in Del Monte Foods Co. securities that are the subject of this litigation during the class period set forth in the complaint are as follows:

| Security | Date of Transaction | Amount of Shares Stating Whether Purchased(P) or Sold(S) | Price Per Share |
|---|---|---|---|
| DLM | 2/5/99 | P-80 | $15.62 |
| | | | |
| | | | |

1.    I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

2.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

18 Jan 11

DALLAS FAULKNER